UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
WILLIAM T. PENNELL JR.,             )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        CIVIL ACTION
                                    )        NO. 13-11519-WGY
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,                           )
                                    )
            Defendant.              )
_____)


YOUNG, D.J.                                    September 25, 2014

MEMORANDUM AND ORDER

I.   **INTRODUCTION**

        This is an action under section 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).  Compl. 1, ECF No. 1.  The

Plaintiff, William T. Pennell Jr. ("Pennell"), is seeking

judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying him

Social Security disability insurance ("SSDI") benefits.  Id.

Pennell argues that the decision of the Administrative Law Judge

(the "hearing officer") denying him benefits contained errors of

law and was not based on substantial evidence.  Id. at 2-3.

Specifically, he claims the hearing officer did not give

appropriate weight to the medical evidence existing prior to the date last insured and failed to apply the proper standard of law in determining the onset date of his disability. Mem. Supp. Pl.'s Mot. Vacate Comm'r's Final Decision ("Pl.'s Mem.") 6, ECF No. 12. Pennell therefore requests that this Court reverse the hearing officer's decision and award benefits under the provisions of the Social Security Act, or, alternatively, remand the case for further hearing. Compl. 3. Pennell also requests an award of attorney's fees. Id. The Commissioner requests that this Court affirm her decision and deny Pennell SSDI benefits. Def.'s Mot. Affirm Comm'r's Decision ("Def.'s Mot. Affirm") 1, ECF No. 17.

### A. Procedural Posture

Pennell applied for SSDI benefits on April 17, 2009. Compl. 1-2; Answer 2, ECF No. 6. The Social Security Administration denied his application initially and upon reconsideration. Admin. R. 9, 81, ECF No. 7. On February 12, 2010, Pennell completed a request for a hearing before a hearing officer. Id. at 104. A hearing took place on February 22, 2011, in Boston, Massachusetts. Id. at 50. The hearing officer issued a decision denying Pennell's application for SSDI benefits on March 18, 2011. Id. at 81, 87. Pennell appealed the unfavorable decision to the Appeals Council of the Social Security Administration. Id. at 92. On September 21, 2011, the

Appeals Council vacated the hearing officer's decision and remanded the case to the Social Security Administration.  Id.  A second hearing occurred on May 3, 2012, before the same hearing officer.  Id. at 23.  On May 18, 2012, the hearing officer again denied Pennell's request for SSDI benefits.  Id. at 6.  On May 31, 2012, Pennell filed an appeal of that decision to the Social Security Appeals Council.  See id. at 5.  On April 26, 2013, the Appeals Council denied his request for review.  Id. at 1.

On June 26, 2013, Pennell filed the present action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the Commissioner's decision.  Compl. 1.  The Commissioner filed an answer on August 27, 2013.  Answer 1–3.  On November 12, 2013, Pennell filed a motion and supporting memorandum requesting a reversal of the Commissioner's decision.  Pl.'s Mot. Vacate Decision Comm'r & Reverse or Remand, ECF No. 11; Pl.'s Mem.  The Commissioner responded on February 4, 2014, by filing a motion for an order affirming her decision.  Def.'s Mot. Affirm.  The same day, the Commissioner filed a memorandum supporting her motion.  Mem. Law Supp. Def.'s Mot. Affirm Comm'r's Decision ("Def.'s Mem."), ECF No. 18.  On February 15, 2014, Pennell filed a reply memorandum to the Commissioner's response.  Pl.'s Reply Mem. ("Pl.'s Reply"), ECF No. 19.

### B. Factual Background

Pennell was born on January 27, 1957. Admin. R. 26. As of his date last insured,[1] December 31, 2007, he was fifty years old. See id. 9, 81. Since January 2000, Pennell has sought medical treatment for back problems. Id. at 284-85. On February 11, 2009, Pennell sustained serious injuries in a motor vehicle accident. See id. at 337. As a result of the accident, related surgeries, and other medical issues, Pennell suffered from split muscles, a hernia, an open wound, abrasions requiring skin grafts, carpal tunnel syndrome, and the loss of sight in his left eye. Id. at 61-62. On his application for SSDI benefits, Pennell listed his disability onset date as April 1, 2006, claiming he could no longer work at that point due to back pain. Id. at 221. Pennell is a high school graduate. Id. at 27. His past work experience includes working as a car salesman for thirteen years from 1990 to 2003. Id. at 222. Pennell also spent a few summers in the early 2000s working as a pool salesman. Id. at 29-30. He later worked as a gutter salesman from February 2006 through April 2006. Id. at 222.

### 1. Medical Evidence

In regards to his pre-accident disability, Pennell reported having back pain as early as 2000. See id. at 284-85. On

---

[1] The date last insured is the last date on which an applicant is eligible to receive SSDI. To be Title II Disability Insurance Benefit eligible, an applicant must have disability insured status as of the onset date of a disability. See 20 C.F.R. 404.131(a).

January 6, 2000, he saw Dr. Jeffrey Jackel at Milton Hospital and was given a lumbar epidural block with steroid injection. Id. at 284, 286. Pennell received additional steroid injections numerous times between 2000 and 2002. Id. at 284, 289, 291-92. In 2002, neurological reports produced by Dr. Patrick J. Madden ("Dr. Madden") at Milton Hospital indicated that there was evidence of acute left L5 radiculopathy and mild chronic left S1 radiculopathy. Id. at 285. Subsequent neurological examinations through 2003 documented Pennell's complaints of neck and back pain as well as upper and lower extremity numbness and weakness. See id. at 311-12, 314, 322, 327-29. On January 29, 2002, a lumbar spine MRI revealed anterolisthesis of L5 on S1 and moderate to severe diffuse disc bulging resulting in moderate to severe bilateral neural foraminal stenosis. Id. at 581.

Neurophysiological testing conducted on February 18, 2002, revealed evidence of a predominantly sensory demyelinating polyneuropathy and mild to moderate chronic right-sided cervical polyradiculopathy. Id. at 314-15. A cervical MRI conducted by Dr. Madden on April 3, 2002, showed disc bulges at the C3-C4 and C5-C6 levels. Id. at 312. Subsequent MRI exams in 2003 showed these bulges as well as stenosis at L2-L3 and a protrusion at C5-6. Id. at 305-08. During a July 2003 examination with Dr. Madden, Pennell complained of left upper extremity numbness and

decreased left hand grip.  Id. at 309.  Testing showed left median mononeuropathy at the carpal ligament, which is consistent with left carpal tunnel syndrome, as well as left C6 radiculopathy.  Id. at 310.  A CT scan conducted on August 17, 2004, showed degenerative changes of the L4-L5 facet joints and bilateral L5 spondylolysis.  Id. at 583.  Later, during a follow-up examination at Highland Medical Center on November 24, 2004, Pennell reported having continued back pain.  Id. at 577. Between at least December 2003 and June 2005, the claimant was prescribed the medication Vicodin.  See id. at 576, 579-80. Pennell again reported having back pain during an appointment at Highland Medical Center on April 18, 2006.  Id. at 575.

### 2.  The 2011 and 2012 Hearings

On February 22, 2011, Pennell appeared before a hearing officer for the first time to testify about his application for SSDI benefits.  Id. at 50.  Pennell explained that he worked for years as a car salesman, during which he spent a substantial amount of time on his feet, walking around, taking customers on test drives, and filling out paperwork.  Id. at 58-59.  During the winters, as a part of his job description, the claimant shoveled snow, cleaned snow off of cars, and moved cars to alternate locations.  Id. at 59-60.  In his capacity as a gutter salesman, Pennell went to homes, took measurements, climbed ladders, and made estimates for customers.  Id. at 60.

Pennell was not working at the time of this hearing and explained that his medical conditions prevented him from working.  Id. at 61.  Many of the impairments he listed were a result of his February 2009 car accident.  Id. at 61-62, 337. Pennell went on to explain that he has had back problems since at least 2000, stating that the resulting pain prevented him from working.  Id. at 62.  The claimant was on medication to alleviate his back pain, but weaned himself off of it over the course of a few years because it made him dizzy and unable to function.  Id. at 63.

In response to questioning by his attorney, Pennell explained that Dr. Madden treated his back problems by prescribing medication and referring him to receive epidurals. Id. at 64.  Pennell attempted to return to work in 2002 but could not stand the pain and stopped working at his car dealership in 2003.  Id. at 65.  Pennell had difficulty writing, holding a ruler, and performing household chores.  See id. at 66.  While he was able to take out the trash and cook for himself and his wife, he re-injured his back when mowing the lawn.  Id. at 66-67.  With regard to his injuries sustained in the 2009 car accident, Pennell explained that he struggled to conduct daily activities such as bending over, tying his shoes, and sleeping.  Id. at 69.  He stated that even when performing a sedentary task, sitting for six hours and standing for two hours

a day, he would be in severe pain. Id. at 69-70. Pennell testified that in 2004, he was instructed not to lift more than ten pounds. Id. at 70.

The hearing officer then examined a vocational expert as to Pennell's past jobs. Id. at 71-73. The expert testified that working as a car, gutter, and pool salesman were skilled positions that required light exertional levels. Id. at 71. The vocational expert explained that Pennell's jobs provided him with transferrable skills including "customer service, communication, product knowledge, financing, [and] negotiating." Id. at 72.

A second hearing occurred on May 3, 2012, following the notice of an order issued by the Social Security Appeals Council vacating the decision and remanding the case to the hearing officer. Id. at 23, 92. Pennell's testimony concerning his age, education, and work history remained consistent with his previous testimony during the February 22, 2011, hearing. Id. at 26-27. He provided additional details regarding his work as a pool salesman, explaining that he would travel to the homes of potential customers, take measurements, and discuss with customers what type of pool could be installed. Id. at 30. Pennell asserted that since December 31, 2007, he has been unable to work as a car salesman or in any of his other previous jobs, due to back pain and neck pain. Id. at 31-32.

Pennell posited that his back pain arose as early as 2000, and that the back pain did not develop over time, but rather "just happened." Id. at 33. On a typical day, the claimant spent three to four hours standing up and would have to sit for one or two hours and rest because of the pain. Id. at 34-36. On occasion, Pennell would miss work due to the pain or show up late because he had to take additional measures to alleviate his pain. Id. at 34-35. He took pain medications including Oxycontin, Vicodin, and fentanyl patches between 2003 and 2006. Id. at 37. At the time of this hearing, Pennell was taking oxycodone and using a fentanyl patch prescribed by a doctor at Massachusetts General Hospital. Id. at 37-38.

Pennell also noted problems using his left hand due to carpal tunnel syndrome. Id. at 39. He discussed surgery as an option for his back problems in 2000, but decided against it. Id. at 40. He also stated that he has difficulty sleeping and breathing at night. Id. at 42.

### 3. State Agency and Medical Source Assessments

The record contains two state agency assessments: one conducted in September 2009, and the other conducted in February 2010. Id. at 472, 569. These assessments were conducted by doctors who reviewed Pennell's medical records to determine whether there was sufficient evidence of a disability prior to the date Pennell was last insured. Id. In the September 2009

assessment conducted by Dr. Theresa Kriston, she found there to
be "insufficient evidence upon which to adjudicate the claim at
this time." Id. at 472. She noted, however, that the claimant
appeared to have a history of back pain which caused him to
cease working in 2006. Id. Dr. M.A. Gopal conducted the
February 2010 state agency assessment, which similarly revealed
that there was insufficient medical evidence from April 2006 to
December 2007 to determine whether the claimant was disabled as
of the date last insured. Id. at 569.

In a medical source statement dated October 2009, following
the February 2009 motor vehicle accident, a physician observed
that Pennell could lift and carry ten pounds, could stand and
walk for less than two hours in an eight-hour workday, and must
periodically alternate between sitting and standing to relieve
pain or discomfort. Id. at 527-28. The physician's assessment
also indicated that Pennell had limitations in both his upper
and lower extremities with regards to pushing and pulling, and
that he could perform certain postural activities only
occasionally. Id. at 528. Further, Pennell's eyesight was
limited due to optical nerve damage. Id. at 529. Finally, the
physician concluded that Pennell's impairments limited his
ability to handle extreme temperatures; dust; vibration;
humidity or wetness; hazards such as machinery or heights; and
fumes, odors, chemicals, and gases. Id. at 530.

## II.  LEGAL STANDARD

### A.  Standard of Review

This Court's review of a Social Security disability benefit determination is governed by 42 U.S.C. § 405(g), which provides that "a district court has the power to affirm, modify, or reverse a decision of the Commissioner." Rivera v. Astrue, 814 F. Supp. 2d 30, 33 (D. Mass. 2011).  The Court "must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  Additionally, in making a ruling, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The First Circuit has stated that "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," then the Commissioner's findings must be upheld. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (internal quotation marks omitted)).  "As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court

must not perform such tasks in reviewing the record." <u>Rivera</u>,
814 F. Supp. 2d at 33. "[U]nder the substantial evidence
standard, the Court must uphold the Commissioner's
determination, 'even if the record arguably could justify a
different conclusion, so long as it is supported by substantial
evidence.'" <u>Id.</u> (quoting <u>Rodriguez Pagan</u> v. <u>Sec'y of Health &
Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987)). This Court,
however, may "review the conclusions of law of the
administrative law judge, . . . and may invalidate findings of
fact which are 'derived by ignoring evidence, misapplying the
law, or judging matters entrusted to experts.'" <u>Bazile</u> v.
<u>Apfel</u>, 113 F. Supp. 2d 181, 184 (D. Mass. 2000) (quoting <u>Nguyen</u>
v. <u>Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)).

**B.   Social Security Disability Standard**

Under 20 C.F.R. § 404.1505, a person is disabled if he or
she lacks the ability "to do any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months." The Social Security Administration uses a
five-step evaluation process to determine whether a person is
disabled. <u>Id.</u> § 404.1520(a)(1). At step one, the claimant's
work ability is considered. <u>Id.</u> § 404.1520(a)(4)(i). If the
claimant is performing "substantial gainful activity," he or she

will be found not disabled.  See id.; see also id. § 404.1572.

Substantial work activity "involves doing significant physical

or mental activities," id. § 404.1572(a), and gainful work

activity describes work "done for pay or profit, whether or not

a profit is realized," id. § 404.1572(b).

   If the claimant is not performing substantial gainful

activity, the evaluation proceeds to the second step, where the

medical severity of the claimant's impairments is considered.

Id. § 404.1520(a)(4)(ii).  In order to be found disabled, this

step requires that the claimant "have a severe medically

determinable physical or mental impairment that meets the

duration requirement in section 404.1509, or a combination of

impairments that is severe and meets the duration requirement."

Id.  Current regulations define a severe impairment as an

impairment which "significantly limits your physical or mental

ability to do basic work activities."  Id. § 404.1520(c).

"[T]he claimant bears the burden of showing that he has a severe

impairment or a combination of severe impairments."  Rivera, 814

F. Supp. 2d at 35.  In addition, unless the impairment at issue

"is expected to result in death, it must have lasted or must be

expected to last for a continuous period of at least 12 months."

20 C.F.R. § 404.1509.

   If this step is satisfied, the evaluation proceeds to the

third step, where the medical severity of the claimant's

impairments is considered under specific criteria. Id. §
404.1520(a)(4)(iii). Here, the claimant will be found disabled
if his or her impairments "meet[] or equal[] one of [the]
listings in appendix 1 of this subpart and meet[] the duration
requirement." Id. If the claimant fails to satisfy step three
by not having an impairment that meets or equals a listed
impairment, then the residual functional capacity of the
claimant must be determined prior to moving to step four of the
analysis. Id. § 404.1520(e). The claimant's residual
functional capacity "is the most [he or she] can still do [in a
work setting] despite [his or her] limitations." Id. §
404.1545(a)(1). This is determined based on all the relevant
evidence in the case record. Id. In reaching this
determination, all medically determinable impairments are
considered, including those that are not severe. Id. §
404.1545(a)(2). In addition, the claimant's "ability to meet
the physical, mental, sensory, and other requirements of work"
is also considered. Id. § 404.1545(a)(4).

The fourth step evaluates the claimant's residual
functional capacity. Here, the claimant's residual functional
capacity is considered in conjunction with his or her past
relevant work. Id. § 404.1520(a)(4)(iv). If the claimant can
still perform his or her past relevant work, the hearing officer
will find the claimant not disabled. Id.

At the fifth and final step of this analysis, the hearing officer considers the claimant's residual function capacity, along with his or her "age, education, and work experience to see if [the claimant] can make an adjustment to other work." Id. § 404.1520(a)(v).  If the claimant is able to perform other work, the hearing officer will find the claimant not disabled. Id.  Likewise, if the claimant is unable to adjust to other work, he or she will be found disabled.  Id.  "The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Act," while the Commissioner bears the burden of proving that the claimant is able to perform other work at the final step of analysis.  Rivera, 814 F. Supp. 2d at 34.

**III. THE HEARING OFFICER'S DECISION**

Following Pennell's first hearing on February 22, 2011, the hearing officer denied Pennell's application for SSDI benefits on March 18, 2011.  Admin. R. at 50, 81-87.  The hearing officer, applying the five-step sequential analysis process, explained his findings of facts and conclusions.  First, he concluded that Pennell did not engage in substantial gainful activity between the alleged onset date of April 1, 2006, and the date last insured of December 31, 2007.  Id. at 84.  Next, the hearing officer found that the claimant had multiple "medically determinable" impairments, but that the "record

fail[ed] to establish any severe impairment." Id. at 86.  After
considering the administrative record and Pennell's testimony,
the hearing officer found Pennell not disabled.  Id. at 86-87.

Upon Pennell's appeal, the Appeals Council for the Social
Security Administration vacated and remanded his case, id. at
93, instructing the hearing officer to "further evaluate the
claimant's impairments and proceed to the next step . . . in the
sequential evaluation process," id., and to "further evaluate
the claimant's subjective complaints and provide rationale in
accordance with the disability regulations pertaining to
evaluation of symptoms," id. at 93-94.

After further evaluation of Pennell's case at a subsequent
hearing, the hearing officer again denied his application for
benefits on May 18, 2012, after following the five-step process
outlined above.  Id. at 9-17.  First, the hearing officer
concluded that Pennell did not engage in substantial gainful
activity between the alleged onset date of April 1, 2006,
through Pennell's date last insured of December 31, 2007.  Id.
at 12.  At step two, the hearing officer concluded that Pennell
"had the following medically determinable impairments: mild
stenosis at L2-3 and grade I anterolisthesis at L5-S1 with
radiation to the left lower extremity; C3-4 and C6-7 bulges and
C5-6 disc protrusion with left C6 radiculopathy; right-sided
polyneuropathy; and left carpal tunnel syndrome." Id.  Despite

finding the claimant had these impairments, the hearing officer found that the claimant "did not have a severe impairment or combination of impairments." Id. at 15.

Although the hearing officer concluded that Pennell's impairments were not severe at step two, the hearing officer continued to step three as instructed by the Appeals Council. Id. at 16. Here, the hearing officer concluded that Pennell failed to establish that his conditions met or equaled a listed impairment, and also failed to describe his physical and mental limitations as of the date last insured. Id. at 16-17. As a result, the hearing officer concluded that Pennell was not disabled during the time between the alleged onset date through the date last insured. Id. at 17. The hearing officer was not required to continue to steps four and five of the analysis because "all five steps are not applied to every applicant, as the determination may be concluded at any step along the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

## IV. ANALYSIS

### A. Pennell's Arguments

Pennell requests that this Court reverse the decision of the Commissioner and approve his application for benefits, arguing that the decision was not supported by substantial evidence and that the hearing officer made errors of law in

evaluating his testimony. Compl. 2-3. First, Pennell claims
that the hearing officer did not give proper weight to the
medical evidence existing prior to the date last insured,
particularly in regards to his impairments stemming from his
back pain. Pl.'s Mem. 6-7. Specifically, Pennell argues that
the hearing officer improperly treated a noticeable decline of
medical treatment between 2004 and 2009 as an indication that
the Plaintiff was not disabled as of December 31, 2007, the date
last insured. Id. at 8; see also Def.'s Mem. 9. His second
argument alleges that the hearing officer failed to follow the
proper procedures for establishing the onset date of his
disability, and also failed to establish any findings as to his
current disability. Pl.'s Mem. 9-11. In the event that this
Court decides not to reverse the decision of the Commissioner,
Pennell further requests that his case be remanded for further
hearing. Compl. 3.

"[A] denial of disability benefits need not be upheld if
there has been an error of fact or law in the evaluation of the
particular claim." Bitsacos v. Barnhart, 353 F. Supp. 2d 161,
164 (D. Mass. 2005) (Neiman, M.J.). Upon careful review of the
written conclusions provided by the hearing officer, as well as
the administrative record and parties' briefs, the Court
determines that the 2012 denial of disability benefits should be

upheld, ruling that there was no error of fact or law made by the reviewing hearing officer.

**B.    Disputed Medical Evidence Prior to the Date Last Insured**

Following the May 2012 hearing, the hearing officer determined that Pennell did not have a severe impairment or combination of impairments that significantly limited his ability to perform work-related activities for twelve consecutive months, as of the date last insured.  Admin. R. 15; see also 20 C.F.R. § 404.1521.  In reaching this decision, the hearing officer considered Pennell's symptoms, together with objective medical evidence and the testimony of a vocational expert.  Admin. R. 10, 15.  The hearing officer relied heavily on the assessments of Drs. Kriston and Gopal, finding that their assessments were consistent with the record as a whole.  Id. at 15.  Dr. Kriston in September 2009 found that there was "insufficient evidence upon which to adjudicate the claim," id. at 472, and Dr. Gopal in February 2010 also found insufficient evidence to conclude that the claimant had a disability from April 2006 to December 2007, id. at 569.  Although the hearing officer acknowledged that Pennell testified to back pain and left carpal tunnel syndrome prior to the date last insured, he noted that had these symptoms been truly severe, Pennell would have reasonably sought medical treatment during the five-year

period between 2004 and the date of the accident in 2009, id. at
16, especially in light of the fact that Pennell received a
noticeably greater amount of medical treatment for his back pain
between 2000 and 2003.  See id. at 12-15 (including multiple
steroid injections, pain medication prescriptions for Oxycontin,
fentanyl, and Vicodin, and numerous nerve and MRI tests); see
also Pl.'s Mem. 8.  Noting the decline in treatment records
between 2004 and 2009 in comparison to this earlier period, the
hearing officer concluded there was insufficient medical
evidence to support the finding of a severe impairment as of the
date last insured, and denied benefits to Pennell.  Admin. R.
15-17.

    Pennell strongly contests the hearing officer's conclusion
that although he found evidence that Pennell sought testing and
treatment for back pain between 2000 and 2003, "[t]he record
indicate[d] no treatment for 5 years between 2004 and the 2009
motor vehicle accident."  Id. at 16.  Pennell argues that the
hearing officer improperly disregarded medical evidence in the
record which indicated that Pennell had received treatment
during this period.  For instance, there is a report of a CT
scan conducted on August 17, 2004, showing degenerative changes
of the L4-L5 facet joints and bilateral L5 spondylolysis.  Id.
at 583.  Pennell also sought treatment at Highland Medical
Center on November 24, 2004, where he reported continued back

pain.  Id. at 577.  In addition, between at least December 2003 and June 2005, Pennell was prescribed Vicodin.  Id. at 576, 579-80.  Pennell again reported having back pain during an appointment at Highland Medical Center on April 18, 2006.  Id. at 575.  Though the Court acknowledges that such evidence contradicts the hearing officer's claim that the claimant did not seek treatment between 2004 and 2009, it agrees with the hearing officer's overall determination that the evidence did not support a finding of a severe impairment lasting at least twelve months, nor did it support any of the listed impairments under the Act.  See Def.'s Mem. 9-10.

Pennell provided several explanations for the gap, or perceivable decline, in medical treatment for his pre-accident impairments, such as the June 2005 move of his treating physician, Dr. Peppino Butera, to Italy.  Def.'s Mem. 4.  While the Commissioner notes that Pennell did not seek treatment after his doctor left the country until the time of the 2009 accident, Pennell argues that this gap in medical treatment for his back was explained by his desire to wean himself off medication in 2006 and 2007, Pl.'s Mem. 8-9, as well as his unemployed status and his wife's job change.  Id. at 11 (citing earlier testimony that he had to find new insurance as well as a new doctor, resulting in his delay in filing for disability right away).  While this Court certainly understands the delays created by

circumstances of unemployment, see Garcia v. Colvin, 741 F.3d 758, 762 (7th Cir. 2013) ("Persons who don't have health insurance often delay in seeking medical care even for serious conditions."), Pennell did not clearly indicate the dates during which he was uninsured, and testified only to the fact he was unemployed around 2007 and 2008 and that he switched insurance plans around 2009. See Admin. R. 38-39. Based on this explanation, the Court looks to the medical evidence directly to determine whether the hearing officer's conclusions were supported by the record.

Pennell's medical records between 2004 until the 2009 accident reveal uncertainties as to the severity of the alleged impairments. For instance, the Commissioner acknowledged that Pennell reported lower back pain during a visit to Highland Medical Center in April 2006, but points out that this doctor's visit was to treat allergy, cold, and dizziness symptoms, as well as to refill an anti-anxiety medication. Def.'s Mem. 4 n.4 (citing Admin. R. 575). During an October 2008 new patient visit with Dr. Cynthia Cullinane, Pennell reported lower back pain, but did not receive specific treatment for it. See Admin. R. 433-35. During a subsequent check-up in December 2008, Pennell did not report new complaints about his lower back pain, although his symptom of "chronic intermittent low back pain

[without] radiculopathy" was noted in his medical history, as well as under the comprehensive system review.  Id. at 427.

To the extent that the hearing officer concluded that Pennell did not seek treatment between 2004 and 2009, this Court acknowledges that Pennell did, on a couple of occasions, note his lower back pain during doctor's visits.  But on the question of whether this evidence was sufficient to support a conclusion establishing a severe impairment, the Court agrees with the hearing officer's determination.  Taking into consideration Pennell's explanations, the desire to wean himself off of pain medications and his search for a new doctor cannot fully explain the lengthy period of time in which Pennell barely reported his physical impairments for medical treatment.  Based on the full record before this Court, and understanding that "remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing," Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139 (1st Cir. 1987), this Court upholds the hearing officer's determinations that no severe impairment was demonstrated.

### C.  Establishing a Disability Onset Date is Inapplicable

A crucial step in determining eligibility for benefits is establishing an onset date of disability, which is "the first

day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249 (August 20, 1980). Pennell argues that the hearing officer did not employ the proper standard in making this determination, stating that a medical expert should have been called to aid in establishing the onset date. Pl.'s Mem. 10; id. at 6 ("The presiding ALJ did not employ the proper standard in determining the onset date of Mr. Pennell's disability. Where present disability has been established, the ALJ must then determine, by inference if necessary, when the disability began."). In opposition, the Commissioner points out that Pennell bases his argument upon an assertion that he was disabled at the time of the hearing officer's decision – when in fact, no such conclusion was made by the hearing officer. Def.'s Mem. 14. Because the hearing officer did not find that Pennell was then presently disabled, the Commissioner argues there was no need to bring in a medical expert. Id. The Court agrees with the Commissioner.

The findings of fact and conclusions of law set out by the hearing officer included: (1) the date last insured of December 31, 2007, (2) the period of time in which the claimant did not engage in substantial gainful activity between April 2006 and December 2007, (3) the medically determinable impairments through the date last insured, (4) the determination that the combination of impairments did not significantly limit work-

related activities for twelve consecutive months, and therefore was not severe, and (5) the conclusion that the claimant was not disabled from April 2006 through the date last insured.  See Admin. R. 12, 15, 17.  No conclusions were drawn as to Pennell's then present state of disability, incorporating the impairments sustained in the 2009 accident and, as a result, Social Security Ruling 83-20 does not apply here.  See Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004) ("SSR 83-20 addresses the situation in which [a hearing officer] makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time.  The ALJ did not find that the claimant was disabled, and therefore, there was no need to find an onset date." (internal citations omitted)); see also Biron v. Astrue, No. 09-cv-40084-FDS, 2010 WL 3221950, at *6 (D. Mass. Aug. 13, 2010) (Saylor, J.) ("Several courts have held, however, that such a determination concerning the onset of disability does not need to be made unless an individual has been determined at some point to have been disabled during the insured period.").

This Court recognizes the severity of the injuries and impairments suffered by Pennell as a result of his February 2009 motor vehicle accident, and notes that the hearing officer considered the medical evidence following this incident in determining whether pre-existing injuries or impairments could

be gleaned from the record.  Admin. R. at 13-14.  Nothing in the medical records, however, indicates a link between the degenerative spine impairments complained of prior to the date last insured, and the traumatic injuries incurred in 2009. Finding no need for the use of a medical expert to establish the onset date of disability here, the Court upholds the hearing officer's determination denying disability benefits to the claimant.

**V.    CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the hearing officer, GRANTS the Defendant's Motion to Affirm the Commissioner's Decision, ECF No. 17, and DENIES the Plaintiff's Motion to Vacate the Decision of the Commissioner and to Reverse or Remand, ECF No. 11.


**SO ORDERED.**


                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE